## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**DAVID KARCHER,**                                              **PLAINTIFF**

**Versus**                                    **Civil Action No. 1:17-cv-266-HSO-RHW**

**RICHARD V. SPENCER, SECRETARY**
**OF THE NAVY, DEPARTMENT OF**
**THE NAVY**                                                   **DEFENDANT**

---

## MEMORANDUM IN SUPPORT OF
## RESPONSE TO MOTION FOR SUMMARY JUDGMENT

---

COMES NOW the Plaintiff, DAVID KARCHER, by and through his undersigned counsel, Brewer Law Office, PLLC, and hereby responds to the Defendant, RICHARD V. SPENCER, SECRETARY, DEPARTMENT OF THE NAVY, UNITED STATES's, Motion for Summary Judgment, and in response thereto, states as follows:

### I.  INTRODUCTION

Plaintiff, DAVID KARCHER (hereinafter referred to as "KARCHER"), filed his Complaint against the Defendant, RICHARD V. SPENCER, SECRETARY, DEPARTMENT OF THE NAVY, UNITED STATES (hereinafter referred to as "NAVY"), on September 25, 2017.  At the heart of KARCHER's Complaint, is the NAVY's disability based discrimination of KARCHER, and more specifically, discriminating against him for a mental disability as opposed to a physical disability, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, et seq. and 29 C.F.R. §1614.203.

### II.  BACKGROUND

The facts, as asserted in the Introduction and Background of the Navy, are not undisputed.  As detailed in KARCHER's Declaration, the facts are as follows:

KARCHER was an employee of the US NAVY, working as a Special Agent, GS-1811-13, Naval Criminal Investigative Service ("NCIS"), in Gulfport, Mississippi.  Since June of 2010, KARCHER was employed as a General Crimes ("CRIM") Agent and/or a Family and Sexual Violence ("F&SV") Agent.  When KARCHER began in Gulfport, Mississippi KARCHER was a CRIM Agent, but in 2013 it was discovered that KARCHER was erroneously assigned as a CRIM Agent and the billet was actually for a F&SV Agent.  During his employment, KARCHER was exposed to traumatic investigations, including deaths, assaults, sexual assaults, child pornography cases, and others.  Additionally, KARCHER was subjected to other extremely stressful matters at work, including but not limited to hostility and bullying from management, causing me to suffer from mental and physical disabilities.  These included anxiety, depression, headaches, hypertension, chest palpitations, and other conditions.  These conditions began to some degree in 2012, however, it began to substantially interfere with his work in 2014.

Karcher was initially thought to be a CRIM/Fraud agent, but on or about June 7, 2013, when there was a government sequestration and agents except F&SV agents were furloughed, it was confirmed that KARCHER had been in a F&SV billet and was an F&SV agent and had been since his initial assignment to Gulfport, MS in June of 2010.  Due to that, KARCHER became the point for sex assault cases.  However, his other workload did not cease as KARCHER still handled CRIM/Fraud matters.

By March of 2014, when KARCHER had already asked for helped, KARCHER had begun making mistakes due to being overworked and stressed.  KARCHER felt overwhelmed, and

KARCHER went to SSA Tara Jasinski about the issues, the lack of manpower, and the issue with all sex assault cases being funneled to him in addition to all of his other case work and operations. At that point, KARCHER had a physical or mental impairment substantially limiting one or more of his major life activities. KARCHER was also regarded as having a physical or mental impairment substantially limiting one of more of his major life activities at a time when KARCHER was not actually impaired, as discussed further herein.

KARCHER made numerous requests to his supervisor(s) for assistance, including accommodation requests, and received none.  In January of 2014 KARCHER told SSA Swords and SSA Jasinski that he needed assistance, that there were unfilled positions, that the workload was too much and more agents were needed. KARCHER also requested to be changed from the F&SV billet as KARCHER was upset and affected by those types of cases.  While SSA Jasinski mentioned that perhaps a new agent could take over the F&SV billet, nothing was ever done.  Additionally, while KARCHER was officially a F&SV agent, and was handling CRIM as well, KARCHER was also handling FRAUD cases for Gulfport, MS.  KARCHER asked that the FRAUD cases be assigned to either the FRAUD agent in Pascagoula, MS or the FRAUD agent in New Orleans, LA and this accommodation request was never done.

On April 29, 2014 KARCHER requested to be on a task force for new agent backgrounds.  This accommodation request was made to ASAC Keleher, as KARCHER really needed to get away from Gulfport and the sex assault cases.  KARCHER was not placed on the task force and there was no response to this request.  In spite of his multiple requests for help, for accommodation, nothing was done.

Finally, on June 12, 2014, KARCHER formally sought assistance from the Federal Occupational Health ("FOH") Employee Assistance Program ("EAP"), with the US NAVY.  At the time, his first line supervisor was SSA Tara Jasinski.  Additionally, his second line supervisor was ASAC Krista Few.[1]  On June 17, 2014 ASAC Krista Few, instead of helping KARCHER who was asking for help and accommodations, continued harassment when she threatened to cancel previously scheduled training, if KARCHER would not attend an upcoming adult sex assault training class.  KARCHER had specifically requested an accommodation in attending that type of class, as at that time (June 17, 2014), his mental and physical conditions were specifically related to the adult sex investigations.  KARCHER more formally requested the accommodation on June 18, 2014.  This request was denied.

The NAVY, in its provided background, asserts that KARCHER refused to participate in mandatory training.  This is simply not the case.  As stated in his Declaration, KARCHER was actually going to the training, however, SSA Tara Jasinski, on or about March 26, 2014, long prior to seeking help from the EAP, had KARCHER to attend adult sex assault training class from May 5 - 16, 2014 (a training course offered monthly).  Then, SSA Tara Jaskinski later advised KARCHER that she had a training class that conflicted, and that her, as a new supervisor, needed to go to her course (only offered annually).  Moreover, at no time did KARCHER refuse the training, he simply requested an accommodation to attend at a later date.

On June 27, 2014, KARCHER provided notice of physician's orders to leave the work environment.  This was another effort by KARCHER to obtain help from his employer and an

---

[1]This was on paper; however, as the "crim" and "fraud" matters were not removed from his responsibilities, his second line supervisor for those subject matters continued to be ASAC Mike Keleher.

accommodation due to his mental disability.  The response to this accommodation request was a confrontational and hostile call from ASAC Krista Few, who advised KARCHER that she had already been in contact with HRM Michelle Pulley, the point of contact for employees who had disciplinary problems, rather than the proper point of contact for employees with work related injuries.[2]  The same day, June 27, 2014, KARCHER requested as another accommodation a transfer from under ASAC Krista Few to ASAC Keleher, because of increasing hostility with ASAC Few. In his request KARCHER made clear that his health and well-being were affected by work, that he experienced exacerbated stress from ASAC Krista Few, and the request was specifically related to his work-related stress/health condition.  KARCHER got no response from the requested accommodation.  Instead, KARCHER was told shortly thereafter that ASAC Mike Keleher could no longer have any contact with him.  At the time, it seemed not only was his accommodation request not considered, it was denied.  It was shortly after learning KARCHER sought assistance for his disabilities from the EAP, that SAC Reeves ordered personnel [to include ASAC Mike Keleher and Tara Jasinski] to have no contact with him.

On June 30, 2017, KARCHER again sought help for his disabilities.  He tried reaching out to HRM Michelle Pulley and could not reach her.  On his own KARCHER went to the OWCP website, and eventually, filed a "CA-1" form for a traumatic injury, relating specifically to the interviews/meetings with ASAC Few, and filed a "CA-2" form for his occupational injury extending beyond one shift.  The CA-1 form concerning ASAC Few was provided to SA Jasinski on July 1, 2014.

---

[2]This was done prior to SAC Few being given the medical note – she was specifically considering KARCHER a discipline problem when all KARCHER wanted was some help - accommodations.

Again, shortly thereafter on July 3, 2014, he was advised that ASAC Mike Keleher could no longer have any contact with him. The following week, on Wednesday, July 9, 2014, KARCHER was in the hospital with a kidney stone, with a surgery scheduled to remove it. He was told by ASAC Mike Keleher that he was (now) allowed to have contact with him and would be helping him. Further, on July 14, 2014, when KARCHER turned in the CA-2 form to SA Jasinski, she said ASAC Mike Keleher had been assigned as his ASAC, and that she was taken out of the chain of command.

The same day, SAC Reeves executed a letter to KARCHER requesting certification of his health condition. There was no mention of KARCHER's prior accommodation requests. Also on July 14, 2014, KARCHER was placed on limited duty. Even more, his employer told him to surrender his credentials, badges, firearm, handcuffs, body armor, and other items. In other words, KARCHER would no longer be permitted to work as a special agent, as he had no credentials.[3] While the NAVY asserts this as "limited duty" (as one with a physical injury would get), this was no duty at all.

On July 18, 2014, KARCHER's physician completed the requested information for the NAVY. The NAVY never advised KARCHER the paperwork was "considered" incomplete. Instead, KARCHER was considered to be "non-compliant" and a discipline problem.

On August 4, 2014, after KARCHER's brief period of leave from work as directed by my physician [a period of approximately five (5) work weeks - Friday June 27, 2014 to Monday, August 4, 2014 – NOT a period of two months as asserted by the NAVY in its Motion, KARCHER returned to work with a note from his physician, authorizing his return to work with no restrictions.

_____

[3]Secretary of the Navy Instruction ("SECNAVINST") 5430.107 defines the roles and responsibilities of NCIS. No personnel are afforded the powers and authorities of a special agent unless they have credentials. Without credentials, KARCHER could not lawfully take statements, conduct investigative work, or gain access to Navy buildings and documents to do any work as a special agent, even in a limited duty status.

KARCHER presented the note, but the NAVY demanded that he surrender his credentials and other items, advised him that he was not to conduct any law enforcement activities, causing him great humiliation and embarrassment.  At this point, the NAVY perceived him to be disabled (though at the time KARCHER was not).

As a result of the way KARCHER was treated by the NAVY, KARCHER became stressed and his prior condition was aggravated.  At the time, on August 4, 2014, KARCHER was not disabled, and he was able to work.  It was not until the treatment of him by his supervisor(s) after his return, that his prior condition was aggravated and worsened.

The NAVY further advised KARCHER to (a) disclose "any and all" medical information and records and (b) submit to a Fitness for Duty examination.  The disclosure of all medical records is not required of employees with only physical condition disabilities as opposed to KARCHER who had the added component of a mental condition disability.  Similarly, a fitness for duty examination is not required of employees with only physical condition disabilities, and their return to work notes from physicians are accepted.

Even more, KARCHER was sent an email by Michelle Pulley, on August 4, 2014, saying that KARCHER was not fit to be a Special Agent and that "adverse action" could result if KARCHER did not sign the overly broad form.  The email aggravated and worsened KARCHER's prior condition.

On August 5, 2014, Tara Jasinski emailed Michelle Pulley to get clarification on the broad medical information and records request form of NCIS; however, no one ever advised KARCHER of any response.  Also, on August 5, 2014, KARCHER made his initial EEO contact, with Anne O'Toole.

Contrary to the "fact" asserted in the Motion for Summary Judgment, KARCHER agreed to submit to the Fitness for Duty evaluation.  KARCHER was advised it would not be scheduled until he signed the FOH broad medical records consent form.[4]  Because there was no response as far as KARCHER was aware or advised to the August 5, 2014 email from Tara Jasinski to Michelle Pulley to get clarification on the FOH broad medical records consent form, KARCHER submitted a fitness for duty and medical records consent form he drafted.[5]  KARCHER never received any response, and ultimately, because of no response, at some point he withdrew the consent form that he drafted and provided.  Moreover, in response to the threat of "adverse action" by Michelle Pulley on August 4, 2014, KARCHER nearly immediately advised he would gladly move forward to schedule the Fitness for Duty evaluation, but simply wanted the issue of medical records consent form(s) addressed.

On August 8, 2014, KARCHER expanded his EEO Complaint to include actions of SAC Kate Smith, my new third line supervisor who replaced SAC Reeves.  On August 12, 2014, when KARCHER saw his counselor, Cindy McNitt, he was advised to take time off work, and to get a medical appointment with his doctor because of the impact the return to work was having on him.

KARCHER then on August 13, 2014,  after he expanded his EEO Complaint to include the actions of SAC Kate Smith, was advised that SAC Kate Smith was making complaints that KARCHER was ignoring her, damaging his reputation and aggravating and worsening his prior

---

[4]It is worth noting that KARCHER was specifically advised that it was against the law for his employer to require a consent for all records, and consent must be limited to only the reason for the recent injury/missed time from work.

[5] His form limited the records request to those records for current treating physicians, who treated KARCHER for the issue of which he was removed from work on June 27, 2014, and for which KARCHER was released with no restrictions on August 4, 2014.

condition. Shortly thereafter, the same day, KARCHER experienced physical symptoms (headache/numbness and tingling on the side of his face), and went to the emergency room.

Then, on August 14, 2014, KARCHER went to his doctor, Kerri Kittrell, FNP, in follow-up to the emergency room visit, and in follow-up to the referral from Cindy McNitt, and was advised to take leave from work for an unspecified period of time.

Even with all of this, SAC Smith pressured KARCHER for a meeting on August 15, 2014, by threatening his job and reputation. These threats by SAC Smith were retaliatory, as a result of KARCHER adding SAC Smith in the EEO matter. In spite of the instructions of his doctor(s), on August 15, 2014, KARCHER went to a meeting with SAC Smith, at which time he presented her with the note from Kerri M. Kittrell, FNP. In response, SAC Smith took away access to important employee benefit information via his government-issued computer and blackberry phone. KARCHER requested another accommodation be made and SAC Smith denied this request, and even threatened him with criminal charges for not returning government equipment.

KARCHER still kept his computer for a brief time as he was conflicted between SAC Smith's demand for its return, and her requirement that he stay in touch with his supervisor. Additionally, there was a very important pending issue for which the computer was required.[6] This interaction with SAC Smith further aggravated and worsened KARCHER's prior condition.[7]

---

[6]The computer had records of a transfer of body armor that was loaned by the Naval Construction Battalion Center ("NCBC") Gulfport to NCIS. This was approximately $50,000.00 of body armor for which KARCHER had signed a document to be responsible for and to return. KARCHER reminded SAC Smith that he had asked for the return of the NCBC body armor or have someone else take over that matter and become responsible for the body armor, and his requests were ignored.

[7]Eventually, on or about October 2, 2014, SAC Smith advised that KARCHER could retain the computer, but by then it was futile, however, as access to key employee websites had

KARCHER never returned to work and ultimately, the US NAVY removed him from his position as a Special Agent.  The NAVY made no attempt to accommodate his disabilities, denied his request for limited duty status, all of which worsened his condition, and ultimately led to his termination from employment.

### III.  DISCUSSION

<u>A.</u>          **<u>Standard of Review</u>**

The standard of review is well-known, and is correctly noted by the NAVY in its Motion.  Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. MISS. R. CIV. P. 56; FED. R. CIV. P. 56.  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> at 248.  In deciding whether genuine issues of material fact exist, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. <u>Id.</u> at 255.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. <u>Id.</u> at 256-57.  The non-moving party is entitled to have its version of all

been disabled.

that is disputed accepted, to have all reasonable inferences construed in its favor, to have all factual conflicts resolved in its favor, and to have the benefit of all favorable legal theories invoked by the evidence. Brown v. Mitchell, 326 F. Supp. 2d 615, 628 (E.D. Va. 2004).

The burden on the non-movant is not onerous.10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712 at 574 (2d ed. 1983). The non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact. Anderson, 477 U.S. at 248-49. Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. Sansone v. Liberty Mut. Ins. Co., Civil Action No.: 3:04-cv-886BN (S.D. Miss. February 3, 2006) (citing Nat'l Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1972)). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. Anderson, 477 U.S. at 247-48.

Summary Judgement is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. 10A Wright, Miller & Kane § 2727 at 148. Because summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task, and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Anderson, 477 U.S. at 242, 249-50. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Sansone, Civil Action No.: 3:04-cv-886BN (quoting

Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5ᵗʰ Cir. 1980)).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. Anderson, 477 U.S. at 255.  Summary judgement is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. Sansone, Civil Action No.: 3-04-cv-886BN (citing *Nat'l Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5ᵗʰ Cir. 1972)).  If a reasonable fact-finder evaluating the evidence could draw more than one inference from the facts, and if that inference is a genuine issue of material fact, then the court should not grant summary judgment. Nelson v. Prison Health Service, Inc., 991 F. Supp. 1452, 1460 (M.D. Fla. 1997).

B. **Disparate Treatment**

The NAVY asserts that KARCHER had failed to make a prima facie showing of disparate treatment because he is not "otherwise qualified" to hold the position of NCIS criminal investigator. It seems that the NAVY is continuing its mistake made on August 4, 2014.  On that date, he had a return to work note dated July 31, 2014, that was clear that he was able to be at work "WITH NO RESTRICTIONS."  It was the NAVY that regarded KARCHER to have a disability.  This evidence must be taken in the light most favorable to KARCHER – meaning, that as of August 4, 2014 he was "otherwise qualified" to work in his position.

The NAVY asserts that KARCHER has not identified any individual given preferential treatment.  This is not correct.  In his recently filed Declaration, KARCHER identifies perhaps the most similarly situated individual, SA Amanda Kopke.  As explained by KARCHER, SA Kopke was assigned as a CRIM agent, just like KARCHER.  SA Kopke was also in the Central Field Office just as KARCHER.  The only difference was that SA Kopke had a physical condition [a bug infestation - larvae].  Just like KARCHER, SA Kopke took leave/had treatment for this physical condition.

However, rather than remove her from her position, take away her credentials and equipment, requiring an extensive medical records release and a fitness for duty examination, they accommodated her physical disability/condition and changed her to a Counter terrorism billet, essentially a desk job.  Moreover, throughout his deposition KARCHER notes numerous examples where those with physical disabilities were not treated the same as those with mental/psychological disabilities. As such, the Motion for Summary Judgment Fails.

C. **Hostile Work Enironment**

The NAVY asserts that KARCHER brought forth no evidence of pervasive conduct as to rise to the level of a hostile work environment.  To the contrary, nothing could be more hostile than the response of the NAVY to KARCHER's repeated requests for help and accommodation.  When KARCHER made numerous requests to his supervisor(s) for assistance, to get additional agents, nothing was done.  When KARCHER asked to be relieved of the FRAUD workload, and nothing was done.  When he asked if someone could take over the F&SV billet and he switched to CRIM, nothing was done.  Even worse than "ignoring" his requested accommodations, his reputation was damaged, even ruined, and his job threatened.

KARCHER specifically requested an accommodation from the F&SV cases, and instead, he was threatened, and directed to go to F&SV training.  When KARCHER asked the simple accommodation of scheduling the training in a few months, a training class which he needed, and was already schedule for, and which training would have given him the "stress" break he needed, the NAVY threatened to cancel that training.

When KARCHER asks (via a doctor note) for a simple accommodation of a break from work, he received a hostile and threatening call from his second line supervisor ASAC Krista Few, who

tells him he had already been in contact with HRM Michelle Pulley, the point of contact for employees who had disciplinary problems.

Shortly after filing his OWCP claim as his injuries (mental stress, etc.) were job related,[8] he is told ASAC Mike Keleher, his one time friend, could no longer have any contact with him.  Keep in mind, another accommodation request was for ASAC Keleher to be his second line supervisor rather than ASAC Few.

When on August 4, 2014, KARCHER returned to work after his brief five week break with no restrictions, KARCHER was treated to the most hostile treatment of all – he was told he was not fit to be a Special Agent, he was threatened with "adverse action," he was told he had to sign a broad medical release, told he had to submit to a Fitness for Duty examination.  Eventually, he was told to return all his government property, was disconnected from the computer system, and was terminated.  For the NAVY to assert that he did not show any evidence of a hostile work environment is farcical.

As previously mentioned, a party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The NAVY has not met this burden.  Accordingly, the Motion for Summary Judgment on this ground should be denied.

D.  **Failure to Accommodate under the Rehabilitation Act**

The NAVY's failure in its Motion for Summary Judgment is its focus on the events beyond the five week (not two month) leave.  They assert that KARCHER made no accommodation requests

---

[8]KARCHER was ultimately successful in his OWCP claim(s).

and declined to engage in the interactive process for a reasonable accommodation to the April 13, 2015 letter asking if he wanted to participate in the interactive process. The issue in the instant case, however, concerns the multiple accommodation requests made by KARCHER beginning in the Spring of 2014 up to and including his request, at a time he was not disabled, that he be allowed and permitted to retain his credentials and computer upon his return to work (at a time that only the NAVY perceived him disabled, at a time he was not actually disabled). The accommodation requests during that time frame were numerous. Instead of open communication and exploring his requests, KARCHER's requests were ignored, KARCHER's reputation was sullied and KARCHER's job was threatened.

E. **Retaliation**

The NAVY's failure in its Motion for Summary Judgment is again, its focus on the wrong time period. KARCHER has demonstrate that after the filing of his OWCP claim, which specifically named ASAC Few as a direct cause of his work related injuries due to her hostile actions against him, she retaliated with even more harassment and threats. Moreover, after the EEO contact, on or about August 13, 2014, KARCHER was contacted and threatened by ASAC Few to attend a meeting – at which meeting, in retaliation, she threatened KARCHER with criminal charges.

The NAVY is now attempting to use comments made by him in his OWCP as an excuse for its actions in requiring a fitness for duty examination and not returning him to work. The issue is, there is no excuse for the NAVY not to accommodate his disability (as distinguished from a physical

disability) by allowing him, similar to SA Kopke, to work a different position that would be the equivalent of desk work.  The NAVY's Motion for Summary Judgment should be denied.[9]

### IV.  CONCLUSION

WHEREFORE, because the NAVY has not, and cannot demonstrates that no genuine issue of material fact exists, and because it has not, and cannot, demonstrate that it is entitled to Summary Judgment, its Motion be denied.

Respectfully submitted, this the 17th day of May, 2020.

BY:    ***DAVID KARCHER, PLAINTIFF***

BY:    /s/ Danielle Brewer Jones
        DANIELLE BREWER JONES, MSB # 102099
        BREWER LAW OFFICE, PLLC
        993 HOWARD AVE
        BILOXI, MS 39530
        Tel: (228) 388-0053
        Fax: (228) 388-7041
        dbrewer@brewerlegalservices.com

(Certificate of Service follows)

---

[9]The NAVY notes that KARCHER may be attempting to include his termination in his suit.  However, KARCHER has not, and does not include his termination in the instant suit.  Rather, KARCHER correctly notes that but for the ongoing wrongs of the NAVY, his mental condition would not have deteriorated.  KARCHER's termination is his damage – not a cause of action.

**Page 16 of  17**

## <u>CERTIFICATE OF SERVICE</u>

I, Danielle Brewer Jones, hereby certify that on this day, KARCHER electronically filed the foregoing with the Clerk of Court using the CMECF system, which sent notification to all counsel of record.

Dated this the 17th day of May, 2020.

BY: <u>/s/ Danielle Brewer Jones</u>
   DANIELLE BREWER JONES, MSB # 102099
   BREWER LAW OFFICE, PLLC
   993 HOWARD AVE
   BILOXI, MS 39530
   Tel: (228) 388-0053
   Fax: (228) 388-7041
   dbrewer@brewerlegalservices.com