## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID KARCHER** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:17cv266-HSO-JCG** |
| | § | |
| | § | |
| **RICHARD V. SPENCER,** | § | |
| **SECRETARY OF THE NAVY and** | § | |
| **DEPARTMENT OF THE NAVY** | § | **DEFENDANTS** |

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'</u> <u>MOTION [50] FOR SUMMARY JUDGMENT</u>

BEFORE THE COURT is Defendants Richard V. Spencer, Secretary of the Navy and the Department of the Navy's (collectively "Defendants") Motion [50] for Summary Judgment. Plaintiff David Karcher alleges that while employed by Defendants he experienced disability discrimination in violation of the Rehabilitation Act, 28 U.S.C. §§ 701 – 795, in the form of disparate treatment, a hostile work environment, and a failure to accommodate, as well as retaliation in violation of the Rehabilitation Act and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17. After consideration of the record, the parties' submissions, and relevant legal authority, the Court finds that Defendants' Motion [50] for Summary Judgment should be granted, and that this civil action should be dismissed.

1

# I. BACKGROUND

A.   Plaintiff's sick leave

At all relevant times, Plaintiff David Karcher ("Karcher" or "Plaintiff") was employed by Defendant the Department of the Navy as a special agent in the Naval Criminal Investigative Service ("NCIS") in Gulfport, Mississippi.  Compl. [1] at 2; Discrimination Compl. [1-2] at 3.  In this role, Karcher served as a criminal investigator, and his duties required him to investigate deaths, assaults, sexual assaults, child sexual exploitation, domestic violence, and property crimes.  *Id.* at 3; Def. Ex. 1, CA-35 Claim Evidence [50-1] at 8.  Karcher alleges that due to the traumatic nature of his work and based upon "other extremely stressful matters at work," in 2014 he began to suffer from anxiety, depression, hypertension, chest palpitations, and other conditions which began affecting his work.  Compl. [1] at 3; Pl. Ex. 1, Karcher Decl. [53-1] at 2.  Karcher contends that he made requests for accommodations to ameliorate these conditions but did not receive assistance from Defendants.  Compl. [1] at 3; Pl. Ex. 1, Karcher Decl. [53-1] at 2-3.

In January 2014, Karcher purportedly informed Supervisory Special Agent Swords ("Swords")[1] and his first line supervisor, Supervisory Special Agent Tara Jasinski ("Jasinski") that his "workload was too much and more agents were needed."  Pl. Ex. 1, Karcher Decl. [53-1] at 3.  He also requested that they remove him from family and sexual violence cases as he was upset and affected by them, and from fraud cases, and asked that these be handled by agents in Pascagoula,

---

[1] The record is unclear what Swords's first name was or where Swords ranked in Karcher's chain of command.

Mississippi, or New Orleans, Louisiana. *Id.* According to Karcher, this conversation did not lead to a change in his working conditions. *Id.*

Karcher claims that in March 2014 he began to make mistakes due to being overworked and stressed. *Id.* at 2. Karcher went to Jasinski about "the issues," a lack of manpower, and all of the sexual assault cases being assigned to him. *Id.* at 2. He claims that this request for assistance was not accommodated. *Id.* at 2-3.

On April 29, 2014, Karcher requested that Acting Special Agent in Charge Mike Keleher ("Keleher") place him on a task force that conducted background checks of new agents because he "really needed to get away from Gulfport and the sex assault cases." *Id.* at 3. Keleher did not respond to this request and Karcher was not assigned to the task force. *Id.*

Jasinski had a discussion with Karcher on June 12, 2014, regarding a requirement that Karcher attend an upcoming mandatory adult sex assault training. Pl. Ex. 2, Karcher Dep. [53-2] at 27-29. Karcher expressed his desire to not attend this training because the sexual assault cases were taking a toll on him. *Id.* He then sought assistance from the Federal Occupational Health Employee Assistance Program ("EAP"), Pl. Ex. 1, Karcher Decl. [53-1] at 3-4, and began seeing a counselor on June 13, 2014, Def. Ex. A, CA-35 Claim [50-1]. Several days later, on June 17, 2014, Karcher's second line supervisor, Acting Special Agent in Charge Christa Few ("Few"), informed Karcher that he would not be permitted to attend a firearms training for which he had previously been scheduled unless he attended the mandatory sexual assault training. Pl. Ex. 1, Karcher Decl. [53-1] at 4; Pl. Ex.

2, Karcher Dep. [53-2] at 28.  Karcher requested to delay the mandatory training until sometime after October 1, 2014, due to the mental and physical conditions from which he was purportedly suffering while working on sexual assault investigations.  Pl. Ex. 1, Karcher Decl. [53-1] at 4, 21.  Karcher maintained that he still wanted to attend the firearms training and wished to delay the mandatory sexual assault training.  Pl. Ex. 2, Karcher Dep. [53-2] at 28.  His conversation with Few ended without a resolution and it is unclear whether Karcher was permitted to delay the mandatory adult sex assault training.  Pl. Ex. 1, Karcher Dep. [53-2] at 27-28.

On June 27, 2014, Karcher submitted a note from his nurse practitioner[2] which stated that he "[c]annot return to work stable."  *Id.* at 5; Def. Ex. I, SMH Physicians Network Note [50-9].  The record does not indicate whether Defendants were ever informed or aware that Karcher was receiving medical care before they received this note.  Karcher claims that Few called him after receiving the note and advised him that she had contacted the Human Resources Manager who handled employee disciplinary problems a few days earlier.  Pl. Ex. 1, Karcher Decl. [53-1] at 5.  At that point, Karcher requested that Keleher supervise him because of Few's "increasing hostility" and the resulting effects on his "work related stress/health conditions."  *Id.* at 5.  While he did not receive a specific response to this request, Karcher was told that he could no longer have contact with certain personnel, including Keleher for a period of three days, and Jasinski.  *Id.* at 5-6.  Karcher was

_____

[2] The record does not reflect when Karcher began seeing the nurse practitioner.  *See* Pl. Ex. 2, Karcher Dep. [53-2] at 31.

also placed on sick leave.  *See* Def. Ex. K, Reeves Sick Leave Letter [50-11].

On June 30, 2014, Karcher filled out forms from the Department of Labor's Office of Worker's Compensation Programs, claiming he suffered a traumatic injury stemming from his interactions with Few and an occupational injury extending beyond one shift.  Pl. Ex. 1, Karcher Decl. [53-1] at 6.  Karcher provided the traumatic injury form to Jasinski on July 1, 2014, *id.*, at which point he learned that Keleher would be his new first-line supervisor and that Jasinski was no longer in his chain of command, *id.* at 7.

On July 14, 2014, Karcher's third level supervisor, Special Agent in Charge Tim Reeves ("Reeves") advised Karcher that he was being placed on limited duty status as a result of his extended sick leave.  *Id.*; Def. Ex. J, Reeves Limited Duty Letter [50-10].  As a condition of this limited duty, Karcher was required to surrender his credentials, badge, firearm, handcuffs, body armor, and other official items.  Pl. Ex. 1, Karcher Decl. [53-1] at 7; Def. Ex. J, Reeves Limited Duty Letter [50-10].  Karcher was also told that when he returned to work, he would be required to undergo a fitness for duty examination.  Pl. Ex. 1, Karcher Decl. [53-1] at 7; Def. Ex. J, Reeves Limited Duty Letter [50-10].  Reeves informed Karcher that Defendants required additional medical documentation to authorize his sick leave. Def. Ex. K, Reeves Sick Leave Letter [50-11].  Karcher's nurse practitioner submitted more information to Defendants on July 18, 2014, concerning his condition.  Pl. Ex. 1, Karcher Decl. [53-1] at 7; Def. Ex. L, Kittell Letter [50-12].

Karcher remained on limited duty status until August 4, 2014, at which time

he provided Defendants with a note from his nurse practitioner stating that he was authorized to return to work without restrictions.  Pl. Ex. 1, Karcher Decl. [53-1] at 8; Def. Ex. M, Release to Work [50-13].  Karcher alleges that at this time, Defendants perceived him as being disabled although he was not.  Pl. Ex. 1, Karcher Decl. [53-1] at 8.  Defendants asked that Karcher disclose his medical records and undergo a fitness for duty examination prior to returning to work.  *Id.* Jasinski also collected Karcher's credentials, badge, pins, passport, and Government credit card.  Def. Ex. N, Karcher's Emails [50-14].  Karcher claims that employees with physical disabilities were not required to undergo a fitness for duty examination, release their medical records, or surrender their credentials prior to returning to work, Pl. Ex. 1, Karcher Decl. [53-1] at 8, and that Defendants' actions "aggravated and worsened" his prior condition, *id.* at 8-9.  Karcher asked Jasinski to inform Reeves that he was filing an EEO complaint against NCIS and Reeves, Def. Ex. N, Karcher's Emails [50-14], and requested that she ask Reeves to reconsider Karcher's limited duty status, *id.*

B.    Plaintiff's EEO activity

On August 5, 2014, Karcher contacted the Office of Equal Employment Opportunity ("EEO") and filed an informal complaint.  *Id.* at 10.  He also agreed to undergo a fitness for duty examination and consented to releasing some of his medical records.  *Id.*  When he did not receive a response regarding his limited medical records consent, he withdrew his consent and requested to be placed on administrative leave.  *Id.*

Karcher amended his informal EEO complaint on August 8, 2014, to include unspecified actions taken by Special Agent in Charge Kate Smith ("Smith"), who had replaced Reeves as his third line supervisor.  *Id.*  Karcher alleges that he learned on August 13, 2014, that Smith had complained that Karcher ignored her. *Id.* at 11.  Karcher contends that Smith's statements damaged his reputation and aggravated and worsened his prior conditions by causing physical symptoms such as headaches, numbness, and tingling in his face.  *Id.* at 11.

During a follow-up appointment with his nurse practitioner on August 14, 2014, Karcher was advised to take leave from work for an unspecified period of time.  *Id.*  The next day he attended a meeting with Smith where he presented her with the nurse practitioner's note.  *Id.*  Smith placed Karcher on paid administrative leave for failing to comply with the fitness for duty examination requirement, Def. Ex. C, Smith Correspondence [50-3], and took his Government issued computer and BlackBerry phone, Pl. Ex. 1, Karcher Decl. [53-1] at 11. Karcher asked that he be permitted to retain his computer so that he could remain in contact with other employees, but Smith denied this request, *id.*, and allegedly threatened Karcher with criminal charges if he failed to return his Government equipment, *id.* at 11-12.  This interaction purportedly "aggravated and worsened [Karcher's] prior condition."  *Id.* at 12.

Karcher ultimately underwent a fitness for duty examination which concluded on April 13, 2015, and found that Karcher was not medically fit for full duty as a special agent, in part because he could not carry a firearm.  Def. Ex. F,

Fitness for Duty Exam [50-6] at 10.  The Reviewing Medical Officer at Federal Occupational Health reached this conclusion after reviewing three examinations conducted between February 24, 2015, and April 1, 2015, as well as documentation dated from June 12, 2014, until April 2, 2015.  *Id.* at 1-2.

Following the results of Karcher's fitness for duty examination, Defendants offered Karcher the opportunity to engage in an interactive reassignment process, which he declined.  Def. Ex. G, Offer to Engage [50-7] at 1; Def. Ex. H, Decision of Removal [50-8] at 1-2.  Defendants ultimately removed Karcher from his position as a special agent and terminated him on June 13, 2015.  Pl. Ex. 1, Karcher Decl. [53-1] at 11; Def. Ex. H, Decision of Removal [50-8] at 1.

B.     Procedural history

Karcher filed a formal complaint with the EEO against Defendants on November 20, 2014.  Final Agency Decision [1-1] at 3.  The EEO issued a final agency decision on June 27, 2017, *id.* at 1, concluding that the Department of the Navy did not discriminate or retaliate against Karcher, *id.* at 53.

On September 25, 2017, Karcher timely filed this lawsuit against Defendants.  Compl. [1].   The Complaint advances three claims: (1) disability discrimination in violation of the Rehabilitation Act in the form of disparate treatment and a hostile work environment (Count I); (2) failure to accommodate discrimination in violation of the Rehabilitation Act (Count II); and (3) retaliation in violation of Title VII and the Rehabilitation Act (Count III).  *Id.* at 5-8.

Defendants have filed the present Motion [50] for Summary Judgment,

asserting that all of Karcher's claims should be dismissed because he cannot establish a prima facie case on any of them.  Mot. for Summ. J. [50] at 1.  Plaintiff has filed a Response [53], to which Defendants have replied.

## II. DISCUSSION

### A.   Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).

This requires the non-movant to identify specific evidence in the summary judgment record that demonstrates a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  Unsubstantiated assertions are not competent summary judgment evidence.  *Id.*   Summary judgment may be

appropriate if the nonmoving party rests "merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993).  Further, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.   <u>Defendants' Motion should be granted because Plaintiff has not carried his summary judgment burden.</u>

In support of his Response to Defendants' Motion for Summary Judgment, Karcher has submitted for the Court's consideration his 30-page declaration, his 237-page deposition transcript, and his wife's 4-page declaration.  *See* Mem. in Opp'n [54].  Karcher's Response and memorandum contain no citations whatsoever to these evidentiary materials, nor does he point the Court to the specific items of evidence that support his claims.  *See id.*  This is insufficient to rebut Defendants' properly supported Motion for Summary Judgment.  *See Forsyth*, 19 F.3d at 1537.  Karcher was required to identify specific evidence supporting his claims and he has not done so.  *See id.*  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Id.* (internal citation omitted).  This alone is grounds for granting Defendants' Motion, and the Motion for Summary judgment will be granted for this

10

reason.  However, even if the Court were to address the substance of Karcher's claims, it finds that Defendants are nevertheless entitled to summary judgment.

C.    Plaintiff's Rehabilitation Act discrimination claims (Counts I and II)

Karcher advances claims for disparate treatment, a hostile work environment, and a failure to accommodate under the Rehabilitation Act.  Compl. [1] at 5-6.  The Rehabilitation Act prohibits discrimination against individuals with disabilities by entities that receive federal funds.  *See* 28 U.S.C. § 794.  Because the Rehabilitation Act and the Americans with Disabilities Act ("ADA") utilize the same standards and afford claimants the same remedies, case law interpreting either statute may be applied to both.  *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

When evaluating Rehabilitation Act discrimination claims at the summary judgment stage, a court must first consider whether the plaintiff has made a prima facie showing of his case.  *Sapp v. Donohoe*, 539 F. App'x 590, 595 (5th Cir. 2013).

> Once the plaintiff makes his prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination.

*Id.*

With this framework in mind, the Court will address Karcher's Rehabilitation Act discrimination claim based upon disparate treatment before turning to his hostile work environment and failure to accommodate claims.

1.    Plaintiff's disparate treatment claim

Karcher claims that he was discriminated against based upon his mental

11

disability because Defendants treated him differently than employees with purely physical disabilities.  Compl. [1] at 5.  He contends that although he was cleared by his nurse practitioner for work without restrictions, he was nevertheless required to undergo a fitness for duty examination and to release his medical records before he could return to work, whereas employees with physical disabilities were not required to take these steps in order to return to work once they were cleared by their physicians.  *Id.* at 5-6; Mem. in Opp'n [54] at 12-13.

To establish a prima facie case of disability discrimination based upon disparate treatment, a plaintiff must show that: (1) he was an individual with a disability or was regarded as having a disability; (2) he was otherwise qualified for the position; (3) he worked for a program or activity receiving federal financial assistance; and (4) he was treated less favorably than non-disabled employees. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).

The parties do not contest for purposes of summary judgment the first and third elements, that Karcher was an individual with a disability who worked for a program or activity receiving federal financial assistance.  Mem. in Supp. [51] at 12; Mem. in Opp'n [54] at 12-13.  Because Karcher cannot establish the fourth element, that he was treated less favorably than non-disabled employees, the Court need not address whether he was otherwise qualified for the position.

Karcher maintains that he was treated less favorably than employees with purely physical disabilities, because when those employees were cleared by their

physicians to return to work they were not removed from their positions, their credentials and equipment were not taken away, they were not required to release their medical records, and they were not required to undergo a fitness for duty examination. Mem. in Opp'n [54] at 12-13. Plaintiff has identified Special Agent Amanda Kopke ("Kopke") as a comparator. *Id.* Kopke worked for the Central Field Office and allegedly suffered from a physical disability due to a bug infestation. Pl. Ex. 1, Karcher Decl. [53-1] at 12; Pl. Ex. 2, Karcher Dep. [53-2] at 50. When she took leave to treat her condition, Defendants accommodated her disability by assigning her to a desk job. Pl. Ex. 1, Karcher Decl. [53-1] at 12; Pl. Ex. 2, Karcher Dep. [53-2] at 5. Kopke was supervised by the "Dallas SSA supervisor." Pl. Ex. 2, Karcher Dep. [53-2] at 5.

Defendants contend that Kopke is not a similarly situated comparator and that the evidence Karcher presents constitutes speculation based upon hearsay. Reply [56] at 3. They maintain that Kopke never worked in Gulfport and that her physical disability does not make her similarly situated to Karcher. *Id.*; Mem. in Supp. [51] at 16-18.

A plaintiff seeking to establish a prima facie case of disparate treatment must show that he "was treated less favorably than others similarly situated outside of his protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). To be "similarly situated" at least one coworker outside of the plaintiff's protected class must face "nearly identical circumstances." *Id.* This coworker, known as a comparator, must: (1) hold the "same job" or hold the same job

responsibilities as the plaintiff; (2) share the same supervisor or have his

employment status determined by the same person as the plaintiff; and (3) have a

history of "violations" or "infringements" similar to that of the plaintiff.  *Id.*

Under this test, Kopke is not a similarly situated comparator because

Karcher and Kopke did not share a supervisor, nor was their employment status

determined by the same person.  *See id.*  Karcher admits that he does not know who

Kopke's supervisor was, only that she was supervised by the "Dallas SSA

supervisor."  Pl. Ex. 2, Karcher Dep. [53-2] at 5.  Nor is there any evidence in the

record showing that the same person determined Karcher and Kopke's employment

status.

Karcher has not shown that Kopke was similarly situated.  Thus, he cannot

state a prima facie case of disparate treatment because he cannot demonstrate that

he was treated "less favorably than others . . . outside of his protected class."

*Alkhawaldeh*, 851 F.3d at 426.  Summary judgment should be granted on Karcher's

disparate treatment claim.

2.   Plaintiff's hostile work environment claim

Karcher asserts that he also experienced disability discrimination in the form

of a hostile work environment.  Compl. [1] at 5.  Defendants maintain that Karcher

falls short of demonstrating the severe and pervasive conduct necessary to establish

a hostile work environment.  Mem. in Supp. [51] at 20.   Karcher counters that he

has established this element by bringing forth evidence of his multiple requests for

assistance, requests for additional agents and a different work assignment,

14

Defendants' refusal to reschedule his mandatory training, and a telephone call from Few after he gave her a nurse practitioner's note requesting leave.  Pl. Ex. 1, Karcher Decl. [53-1] at 2-7.

To establish a hostile work environment claim under the Rehabilitation Act, a plaintiff must show:

> (1) that he belonged to a protected group;
> (2) that he was subjected to unwelcome harassment;
> (3) that the harassment complained of was based on his disability or disabilities;
> (4) that the harassment complained of affected a term, condition, or privilege of employment; and
> (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001). The parties do not contest that for purposes of summary judgment Karcher can establish all but the fourth element, whether the alleged harassment affected a "term, condition, or privilege of employment."  Mem. in Supp. [51] at 19-21; Mem. in Opp'n [54] at 13-14.

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)).  In evaluating whether conduct was severe or pervasive, the Court must examine the totality of circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." *Id.* "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not suffice to alter the terms and conditions of employment. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

The Fifth Circuit recently made clear in *Clark v. Champion National Security, Inc.*, that a disagreement with an employer over the terms of employment or those of an accommodation do not amount to harassment. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 585 (5th Cir. 2020). There the court highlighted the fact that the plaintiff did not allege any ad hominem attacks, teasing, physical or verbal threats, or inappropriate language. *Clark*, 952 F.3d at 585-86. Instead, he claimed harassment based upon his employer's grooming and dress code requirements. *Id.* at 585. The Fifth Circuit held that such allegations were not severe or pervasive and did not create an abusive working environment. *Id.* at 586.

In reaching this conclusion, the court compared two of its prior cases. *Clark*, 952 F.3d at 585-86 (discussing *Credeur v. Louisiana*, 860 F.3d 785 (5th Cir. 2017) and *Flowers*, 247 F.3d 229). In *Credeur v. Louisiana*, the plaintiff was ordered to attend a meeting, received a different accommodation than she requested, had her work performance criticized, was threatened with termination, was asked "to sign false payroll documents," and was forced to take leave without pay. *Credeur v. Louisiana*, 860 F.3d 785, 796 (5th Cir. 2017). The Court of Appeals found this was not sufficiently severe or pervasive to support a hostile work environment claim. *Id.* In contrast, in *Flowers v. S. Reg'l Physician Servs. Inc.*, the alleged harassment

included "humiliating and offensive ad hominem attacks that had no rational
relation to [the plaintiff's] work performance," a sudden change in behavior,
eavesdropping on the plaintiff, intercepting the plaintiff's calls, additional drug
testing, and a sudden change in performance reviews and writeups.  *Flowers*, 247
F.3d at 236-37.  This was found to be sufficient to state a claim for a hostile work
environment.  *Id.*

Based upon the summary judgment record before the Court, Karcher's
allegations fall within the realm of disagreements with his employer over the terms
of his employment and his requested accommodations.  This is not severe or
pervasive conduct that will support a prima facie case of a hostile work
environment.  *See Clark*, 952 F.3d at 585.  Karcher's request to reschedule his
mandatory training, to redistribute work, to hire additional agents, or to change his
work assignments, were all related to the terms of his employment or his desired
accommodations.  *See* Pl. Ex. 1, Karcher Decl. [53-1] at 2-7.  Under Fifth Circuit
precedent, such disagreements cannot form the basis of a hostile work environment
claim because they are not "severe or pervasive." *See Clark*, 952 F.3d at 585.

Karcher does allege that the phone call he received from Few was hostile and
threatening, which theoretically could constitute a verbal threat, inappropriate
language, or ad hominem attack.  Pl. Ex. 1, Karcher Decl. [53-1] at 7.  However,
Karcher has not elaborated on what Few said during this call, nor has he explained
how the call was hostile and threatening.  *See id.*  Without these details, this single,
isolated call does not support his claim.

There are no disputed material facts demonstrating that Defendants' actions amounted to severe or pervasive harassment, rather than simple disagreements regarding the terms of Karcher's employment or his requested accommodations. *See Clark*, 952 F.3d at 585. This is insufficient to withstand summary judgment and Karcher's hostile work environment claim should be dismissed.

3.   Plaintiff's failure to accommodate claim

Karcher claims that Defendants discriminated against him by failing to accommodate his disability and perceived disability. Compl. [1] at 6. Karcher asserts that he made requests for accommodation

> beginning in the Spring of 2014 up to and including his request, at a time he was not disabled, [in] that he be allowed and permitted to retain his credentials and computer upon his return to work (at a time that the Navy perceived him as disabled, at a time he was not actually disabled).

Mem. in Opp'n [54] at 15. Karcher maintains that all of these requests were ignored. Mem. in Opp'n [54] at 15. Defendants argue that the reallocation of job duties Karcher requested was not a reasonable request, and that he did not have a disability of which Defendants were aware at the time he made these requests. Reply [56] at 5-6.

To state a prima facie case of a failure to accommodate, a plaintiff must prove that: (1) he was a qualified individual with a disability; (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013). "An employee who needs an accommodation because of a disability has the responsibility of informing [his]

18

employer." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)

(quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)).

"The employee must explain that the adjustment in working conditions or duties he

is seeking is for a medical condition-related reason, but the employee does not have

to mention the ADA or use the phrase 'reasonable accommodation' . . . Plain English

will suffice." *Chevron Phillips Chem. Co., LP*, 570 F.3d at 621.

Insofar as Karcher claims that Defendants failed to accommodate him when

he sought to return to work on August 4, 2014, when he claims he was no longer

disabled but only regarded as disabled, the Fifth Circuit has held that "[t]o

establish a failure-to-accommodate claim, [a plaintiff] must demonstrate that [he]

had a disability, not just that [he] was regarded as disabled." *Amedee v. Shell

Chem., L.P.*, 953 F.3d 831, 838 (5th Cir. 2020); *see* 29 C.F.R. § 1630.2(o)(4) ("A

covered entity is required, absent undue hardship, to provide a reasonable

accommodation to an otherwise qualified individual who meets the definition of

disability under the 'actual disability' prong  . . . , but is not required to provide a

reasonable accommodation to an individual who meets the definition of disability

solely under the 'regarded as' prong . . . ").  This is due to the fact that "an employee

who requests only the opportunity to return to an unmodified, previously-held

position fails to state a cognizable claim" of a failure to accommodate.  *Burch v.

Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997).

On August 4, 2014, Karcher was seeking the opportunity to return to work as

a special agent without restrictions, Mem. in Opp'n [54] at 15, but a failure to

accommodate theory based upon actions Defendants took on August 4, 2014, is inconsistent with Karcher's claim that he was no longer disabled as of this date. *See Amedee*, 953 F.3d at 838; *Burch*, 119 F.3d at 314; *Crawford*, 245 F. App'x at 381; 29 C.F.R. § 1630.2(o)(4). Karcher's requests that he be allowed to retain his credentials and computer on August 4, 2014, are thus not actionable under a failure to accommodate theory because these requests were made at a time when, according to him, he was not disabled. *See* Mem. in Opp'n [54] at 15. Being regarded as disabled was not sufficient under the circumstances to support a failure to accommodate theory. *See Amedee*, 953 F.3d at 838.

Looking at the summary judgment record with respect to the accommodation requests Karcher purportedly made prior to August 4, 2014, at a time when Karcher claims he was disabled, the record reveals five instances where Karcher arguably sought an accommodation. These include: (1) his January 2014 request to Swords and Jasinski to hire more agents, to be removed from family and sexual violence cases, and to have fraud cases handled by agents in other offices, Pl. Ex. 1, Karcher Decl. [53-1] at 3; (2) his March 2014 request for assistance due to being overworked and stressed because of the lack of manpower and all of the sexual assault cases being assigned to him, *id.* at 2; (3) his April 29, 2014, request to be placed on a task force conducting background checks of new agents, *id.* at 3; (4) his June 12, 2014, request to delay his mandatory adult sex assault training until sometime after October 1, 2014, due to his mental and physical condition, *id.* at 4, 21; and (5) his June 27, 2014, request for time off due to his mental disability and to

be supervised by Keleher, *id.* at 5.

As for Karcher's final request, on June 27, 2014, for time off and to be supervised by Keleher, this accommodation was in fact granted.  Def. Ex. 11, Letter [50-11] at 1; Pl. Ex. 1, Karcher Decl. [56-1] at 7.  The third element of a failure to accommodate claim is that the employer failed to make "reasonable accommodations."  *See Feist*, 730 F.3d at 452.  In granting this request, Defendants did not fail to make a reasonable accommodation.  *See id.*  Accommodations which Karcher requested and which he received cannot form the basis of a failure to accommodate claim.  Thus, the Court will focus on Karcher's other four requests.

Karcher has not pointed the Court to sufficient summary judgment evidence to support a finding that he informed Defendants that he was requesting the January 2014, March 2014, and April 29, 2014, accommodations due to any kind of disability.  *See* Pl. Ex. 1, Karcher Decl. [53-1] at 2-3.  While he informed Defendants that he felt overworked, overwhelmed, stressed, "upset and affected" by family and sexual violence cases, and that "working on sexual assault cases the last several years has really started taking its toll on him," nothing in the record indicates that he explained that this was a medical issue or that it rose to the level of a mental health issue, as opposed to everyday work-related stress.  *See id.* at 2-3, 21.  There is no evidence in the record indicating that Defendants were aware that Karcher was under the care of his nurse practitioner during these times.  Indeed, the record does not reveal when Karcher began seeing the nurse practitioner.  Although he was not required to use  the precise language reflected in the ADA, the

Rehabilitation Act, or the phrase "reasonable accommodation," Karcher was required to give his employer adequate notice that he was seeking assistance for a medical or mental health issue, as opposed to typical workplace stress. Because he failed to do so, he cannot establish a prima facie case of failure to accommodate based upon these three requests.

Only Karcher's June 12, 2014, request to delay his mandatory training until sometime after October 1, 2014, could arguably constitute an accommodation request of which his employer was aware because Karcher specifically stated that he was requesting the accommodation due to his mental and physical conditions, and Few was aware at that point that Karcher was seeking the accommodation because he was "sick." Pl. Ex. 1, Karcher Decl. [53-1] at 4, 21; Pl. Ex. 2, Karcher Dep. [53-2] at 28.

Once an employee makes a proper request for an accommodation, the employer is obligated by law to engage in an "interactive process" with that employee. *Chevron Phillips Chem. Co.*, 570 F.3d at 621. This requires "a meaningful dialogue with the employee to find the best means of accommodating that disability," *id.* (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)), and requires "communication and good-faith exploration," *id.* (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007)). When an employer does not engage in a good faith interactive process, that employer violates the Rehabilitation Act. *See id.* (quoting *Cutrera v. Bd. of Supervisors of La. St. Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

Here, the record indicates that after Karcher advised Jasinski that he wished to delay the mandatory sexual assault training, his request was transferred to Few. Pl. Ex. 2, Karcher Dep. [53-2] at 26-27.  Karcher states that Few informed him that he was required to attend the adult sex assault training because it was mandatory. *Id.* at 27.  The record does not reveal whether this training was rescheduled, but it seems evident that Karcher was never forced to attend it.  *Id.*; *see* Pl. Ex. 1, Karcher Dep. [53-2] at 27-28.  Indeed, Karcher acknowledges that he does not know whether this training was rescheduled.  *See* Pl. Ex. 1, Karcher Dep. [53-2] at 27-28.

The foregoing is insufficient to permit a reasonable jury to conclude that Defendants failed to engage in an interactive process with, or failed to accommodate, Karcher.  Further, to state a prima facie case, Karcher must demonstrate that Defendants "failed to make 'reasonable accommodations' for such known limitations." *Feist*, 730 F.3d at 452.  Karcher does not know whether the mandatory training was moved or delayed, but he apparently never completed it. *See* Pl. Ex. 2, Karcher Dep. [53-2] at 26-27.  Therefore, he cannot demonstrate this element of the prima facie case of failure to accommodate under the Rehabilitation Act.

D.    Plaintiff's retaliation claim under Title VII and the Rehabilitation Act (Count III)

The Complaint alleges that Defendants retaliated against Karcher for engaging in protected activity after August 5, 2014, in violation of Title VII and the Rehabilitation Act.  Compl. [1] at 8.  Specifically, Karcher claims that he engaged in protected activity on August 5, 2014, when he filed his informal EEO complaint.

Defendants argue that Karcher cannot establish a prima facie case of retaliation because he engaged in this alleged protected activity after the adverse employment action of which Karcher complains, the requirement that he undergo a mandatory fitness for duty exam, had already been imposed on August 4, 2014.  Mem. in Supp. [51] at 10.  Karcher counters in his Response to Defendants' Motion that his retaliation claim is instead based upon Few's request that he attend a meeting and threats of criminal charges following his June 30, 2014, Office of Worker's Compensation Programs ("OWCP") claim, which specifically mentioned Few.  Mem. in Opp'n [54] at 15.  Karcher further contends that Defendants' use of comments made by him in his OWCP claim as an excuse for requiring his fitness for duty examination constituted retaliation.  Mem. in Opp'n [54] at 16.

Count III of the Complaint plainly alleges "[t]he PLAINTIFF was engaged in protected activity, *as early as* August 5, 2014," and that "[t]he US NAVY, with knowledge of the PLAINTIFF's protected activity, retaliated against the PLAINTIFF."  Compl. [1] at 8 (emphasis added).  The Complaint also alleges that Karcher's discharge was the adverse employment action he suffered.  *Id.*  However, in his deposition Karcher stated that the adverse employment action was being removed from his position as a special agent and placed on limited duty status.  Pl. Ex. 2, Karcher Dep. [53-2] at 57.  The protected activity referenced in the Complaint was Karcher's informal EEO complaint, which he filed on August 5, 2014.  Reply [56] at 6.

Karcher's allegation of retaliation stemming from his OWCP claim, which

24

was provided to Jasinski on July 1, 2014, is a new factual theory raised for the first time in his Response to summary judgment, as it was clearly not mentioned in the Complaint or even in his deposition.  *See* Compl. [1] at 8 ("The PLAINTIFF was engaged in protected activity, as early as August 5, 2014"); *see* Pl. Ex. 2, Karcher Dep. [53-2] at 57-58.

There are two lines of cases in the Fifth Circuit addressing whether a claim raised for the first time in response to a motion for summary judgment is properly before the Court.  *Williams v. BFI Waste Servs., LLC*, No. 3:16CV75-DPJ-FKB, 2017 WL 1498230, at *2-3 (S.D. Miss. Apr. 24, 2017) (collecting cases).  Those cases finding that dismissal was proper where a response to a motion for summary judgment relied on new facts or theories of liability based that finding on the premise that the complaint did not provide "fair notice of what the claim is and the grounds upon which it rests."  *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)).  This rule has been applied to cases where new factual allegations to support previously pleaded legal theories were raised only in response to summary judgment. *See, e.g., id.*; *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory); *Clark v. Gen. Motors*, No. 3:14cv505-DPJ-FKB, 2016 WL 3574408, at *6 (S.D. Miss. June 23, 2016).

In other instances, the Fifth Circuit has held that courts should construe new theories in a summary-judgment response as a motion to amend.  *See, e.g., Stover v.*

*Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008). "This [rule] is particularly true where . . . the litigant is pro se and has not yet made any amendments to her complaint," *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010), but it has also been applied to represented parties, *see Stover*, 549 F.3d at 989 n.2.

The situation falls within the first line of cases, where a new factual theory is raised for the first time in response to a motion for summary judgment. The record reflects that this claim was not raised at any point until Plaintiff responded to Defendants' Motion for Summary Judgment. *See* Compl. [1] at 8; *see* Pl. Ex. 2, Karcher Dep. [53-2] at 57-58. The Local Rules applicable in this District do not recognize motions located within a response; these must be filed separately. L. U. Civ. R. 5(b)(3)(C). Karcher has not filed a Motion to Amend, nor did he expressly request leave to amend in his Response to Defendants' Motion for Summary Judgment. *See* Resp. [53]; Mem. in Opp'n [54]. Further, in light of the fact that Karcher is a represented party and almost three years have passed since this lawsuit was filed, the Court finds that his entirely new factual theory regarding Few's retaliatory conduct following the June 30, 2014, OWCP claim should not be considered. The Court will only consider Karcher's retaliation claim for actions occurring on or after the filing of his informal EEO complaint on August 5, 2014. *See* Compl. [1] at 8 ("The PLAINTIFF was engaged in protected activity, as early as August 5, 2014").

To establish a prima facie case of retaliation, a plaintiff must show that: (1)

he participated in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Defendants do not contest for purposes of summary judgment that Karcher engaged in a protected activity on August 5, 2014, or that his employer took an adverse action against him. The parties only disagree about whether Karcher has brought forth evidence to show the existence of a causal connection between the protected activity and the adverse employment action. To demonstrate a causal connection, a plaintiff must demonstrate that the employer's decision "was based in part on knowledge of the employee's protected activity." *Lyons v. Katy Indep. Sch. Dist.*, No. 19-20293, 2020 WL 3496855, at *5 (5th Cir. June 29, 2020) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

Karcher's Deposition testimony and Response assert that the adverse employment actions which support his retaliation claim were his removal and placement on limited duty status, which occurred on July 14, 2014, and Defendants' taking of his credentials and Government issued equipment and requiring that he undergo a fitness for duty examination, which all occurred on August 4, 2014. Pl. Ex. 2, Karcher Dep. [53-2] at 224; *see* Def. Ex. J, Reeves Limited Duty Letter [50-10]; Pl. Ex. 1, Karcher Decl. [53-1] at 8; Def. Ex. N, Karcher's Emails [50-14]. Karcher did not file his informal EEO claim until August 5, 2014. Pl. Ex. 1, Karcher Decl. [53-1] at 10; *see* Compl. [1] at 8 ("The PLAINTIFF was engaged in protected activity, as early as August 5, 2014"). The record is beyond dispute that

all of the adverse employment actions of which Karcher complains predated his protected activity. This is insufficient to demonstrate the third element of a retaliation claim because an employer must know of the employee's protected activity at the time it takes the adverse employment action. *See Lyons*, 2020 WL 3496855, at *5.

Defendants could not have known of Karcher's protected activity of filing an informal EEO complaint where the adverse employment decisions of which Karcher complains occurred on August 4, 2014, and on July 14, 2014, before he filed his EEO complaint. As such, Karcher's placement on limited duty status, Defendants' taking Karcher's credentials and Government issued equipment, and Defendants' requirement that Karcher undergo a fitness for duty examination cannot constitute retaliatory conduct because there is no causal connection between these actions and Karcher's informal EEO complaint. Karcher cannot state a prima facie case of retaliation and this claim should be dismissed.

### III. CONCLUSION

As Karcher has not shown the existence of a question of material fact for resolution at trial, summary judgment should be granted. To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Richard V. Spencer, Secretary of the Navy, and the Department of the Navy's Motion [50] for Summary Judgment is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff David Karcher's claims in this lawsuit are **DISMISSED WITH PREJUDICE**. The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 20th day of July, 2020.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE